IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. CROMWELL, as Administrator of the Estate of Arthur Perryman, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO 11-0155-CG-N |
| ADMIRAL INSURANCE CO., and SAFETYNET YOUTH SYSTEMS, LLC d/b/a/ SafetyNet Youth Academy | ) ) ) ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

This action is before the court on the following motions: defendant Admiral Insurance Company's (hereinafter "Admiral") Motion to Realign Parties (doc. 5) and plaintiff's Motion to Remand (doc. 12).[1] These motions have been referred to the undersigned Magistrate Judge for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a). Upon consideration of the motions, the responses of the parties, and for the reasons set forth below, it is RECOMMENDED that defendant's Motion to Realign Parties (doc. 5) be GRANTED and that plaintiff's Motion to Remand (doc. 12) be DENIED.

---

[1] As the court previously noted (*see* doc. 11), realignment of defendant SafetyNet Youth Systems, LLC (hereinafter "SafetyNet"), as a party plaintiff "is necessary to establishing the existence of complete diversity between the parties"; if realignment is denied, there is no basis for federal jurisdiction and the case must be remanded.

Procedural Background

Plaintiff sued SafetyNet and obtained a verdict on his wrongful death claim against SafetyNet in the amount of $3.5 million following a jury trial in the Circuit Court of Dallas County, Alabama. Judgment was entered in that amount, plus costs, on January 27, 2011. According to defendants, SafetyNet filed a post-trial motion in the state court.[2]

SafetyNet was insured by defendant Admiral under a policy which plaintiff claims covered the judgment. Admiral has not yet made a coverage determination, but appears to have provided SafetyNet with a defense in the underlying state action. Pursuant to Alabama's direct action statute, Ala.Code § 27-23-2[3], plaintiff—an Alabama citizen--filed suit against SafetyNet and Admiral in the Circuit Court of Dallas County on February 28, 2011, seeking payment of the proceeds of the Admiral policy in partial satisfaction of the judgment. SafetyNet Youth Systems, L.L.C. is an Alabama citizen. *See* doc. 25. Admiral is a corporation existing pursuant to the laws of Delaware, with its principal place of business in New Jersey.

Admiral filed a timely Notice of Removal (doc. 1), asserting that this court had original jurisdiction over this action on the basis of diversity of citizenship. Defendant SafetyNet did not join in the removal. Admiral now avers that defendant SafetyNet should be realigned as a party

---

[2] The court has no information on the status of this motion.

[3] Ala. Code § 27-23-2 provides:

Upon the recovery of a final judgment against any person, firm, or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury, or death or for loss or damage to property, if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

2

plaintiff in this action; as both plaintiff and SafetyNet are citizens of Alabama, such realignment would be a necessary precursor to the exercise of such jurisdiction. The motions have been fully briefed and are now ripe for this court's consideration.

Analysis

Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th Cir. 1996) (*citing* 28 U.S.C. § 1441(a)), *abrogated on other grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).[4] However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.... Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).

"[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002). Therefore, the burden in this case is on Admiral to establish complete diversity, or that each defendant is diverse from the plaintiff.

Direct Action

Pursuant to the statute setting forth the requirements for federal jurisdiction on the basis of diversity of citizenship:

---

[4] There is no issue concerning whether the amount in controversy has been met in this case.

> [A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, **except that in any direct action against the insurer of a policy or contract of liability insurance**, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business ...

28 U.S.C. § 1332(c)(1) (emphasis added). The Eleventh Circuit has held that a "direct action" for purposes of this provision, was enacted:

> to eliminate the basis for diversity jurisdiction in states that allow an injured third-party claimant to sue an insurance company for payment of a claim without joining the company's insured as a party, where the insured would be a nondiverse party, even though the party insurance company would otherwise be diverse.

Fortson v. St. Paul Fire and Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir. 1985).

Plaintiff acknowledges that, in the current posture of the case—where the insured is also a party—the instant action is not a direct action as that term is used in § 1332(c)(1). Nonetheless, the secondary issue of whether a suit to collect a judgment from a judgment debtor's insurer is a direct action issue remains under consideration because plaintiff takes the position that, if defendant SafetyNet is realigned as a plaintiff, then the Fortson standard is satisfied.[5]

The Eleventh Circuit's Fortson holding was drawn in part from a decision of the former Fifth Circuit, Hernandez v. Travelers Ins. Co., 489 F.2d 721, 723 (5th Cir.) , *cert. denied*, 419

---

[5] If the court accepts that argument, it would then have to consider whether the existence of a prior judgment against the insured, as required by Ala.Code § 27-23-2, precludes application of 28 U.S.C. § 1332(c)(1). Similarly, if the court were to accept Admiral's argument that defendant SafetyNet is a nominal party which should be ignored for jurisdictional purposes, it becomes an issue whether its presence should also be ignored in addressing the applicability of the direct action provision of § 1332(c). See O.M. Greene Livestock Co. v. Azalea Meats, Inc., 516 F.2d 509 (5th Cir. 1975) (plaintiff filed in federal court, then dismissed non-diverse defendants; remaining case against insurer was 'direct action' precluding federal jurisdiction); Andalusia Enter., Inc. v. Evanston Ins. Co., 487 F.Supp.2d 1290 (N.D.Ala. 2007).

U.S. 844 (1973).[6]  Defendant Admiral asserts that Hernandez and Fortson also include the secondary requirement—that the plaintiff not have previously obtained a judgment against the insured.

In Fortson, the Court addressed a different issue—whether a claim against a tortfeasor's insurer for bad faith refusal to settle a claim is a 'direct action.'  Fortson at 1159.  Nonetheless, the court in Fortson quotes a Ninth Circuit decision for the proposition that "[c]ourts have uniformly defined the term 'direct action' as used in this section [1332(c)(1)] as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer **without** joining the insured or **first obtaining a judgment against him**."  Id. (emphasis added) (*quoting* Beckham v. Safeco Ins. Co., 691 F.2d 898, 901-02 (9th Cir. 1982)).  Hernandez likewise decided a different issue—whether a workers' compensation claim against the employer's insurer was a 'direct action'—and therein quoted another case, Vines v. U.S. Fidelity and Guar. Co., 267 F.Supp. 436, 437 (E.D.Tn. 1967), for a similar statement of the general rules governing direct actions.

There are numerous district court decisions holding that an action to collect on a judgment against an insured may be a 'direct action' pursuant to 28 U.S.C. § 1332(c)(1).  *See* Wheelright Trucking Co. v. Dorsey Trailers, Inc., 158 F.Supp.2d 1298 (M.D.Ala. 2001); PACA, Inc. v. Nat'l Union Fire Ins. Co., 2007 WL 98722 (M.D. Ala. Jan 11, 2007); Boston v. Titan Indem. Co., 34 F. Supp.2d 419, 424 (N.D. Miss. 1999); Reko v. Creative Promotions, Inc., 70 F. Supp.2d 998, 1003-04 (D. Minn. 1999); Sherman v. Pennsylvania Lumbermen's Mut. Ins. Co.,

---

[6] The Eleventh Circuit, in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (1981), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to September 30, 1981.

21 F. Supp.2d 543, 545 (D. Md. 1998); Prendergast v. Alliance Gen. Ins. Co., 921 F. Supp. 653, 655 (E.D. Mo. 1996). However, there are also cases which hold that a suit to collect a judgment is excluded from the definition of 'direct action,'[7] including two cases from this court. *See* Armentrout v. Atlantic Cas. Ins. Co., 731 F.Supp.2d 1249, 1254 (S.D.Ala. 2010); and Stabler v. Transportation Ins. Co., No. 06-0237-WS-M, 2006 U.S.Dist.LEXIS 50540 (S.D.Ala. July 21, 2006). In Stabler, the court explained a potential legislative justification for its narrowing construction:

> The method to this madness is that if an aggrieved third party sues a tortfeasor's insurer without first securing judgment against the tortfeasor, then the insurer and tortfeasor are unified in their interest against the plaintiff. In that scenario, the insurer is essentially standing in the shoes of the tortfeasor and defending the tortfeasor's interests by arguing that the tortfeasor is not liable to the aggrieved plaintiff, so it is only logical to superimpose the tortfeasor's citizenship on the insurer. By contrast, *however, if the plaintiff can wait to sue the insurer until after entry of judgment against the tortfeasor, then the tortfeasor and plaintiff's interests are aligned against the insurer, because both insured and plaintiff have a compelling interest in having the judgment paid by insurance proceeds.*

Id. at *3. (emphasis added) Other courts have simply based their decisions on the use of the term "direct" action, which they assert must mean suit against the insurer to establish the insured's—and thus the insurer's—liability to the plaintiff. *See e.g.* Bourget v. Government Emp. Ins. Co., 313 F.Supp. 367, 371 (D.Conn. 1970). On the other side of the question, there seems little strong reason why the purposes behind the 1964 Amendment would not equally support application of the direct action provision of § 1332(c)(1) to garnishments based on state court judgments. In the absence of binding authority on this issue, the court concludes that the better-reasoned position is that a direct action requires not only that the alleged tortfeasor not be joined as a

---

[7] *See also* Mezzetti v. State Farm Mut. Auto. Ins. Co., 346 F.Supp.2d 1058 (N.D.Cal. 2004); Hayes v. Pharmacists Mut. Ins. Co., 276 F. Supp.2d 985, 987 (W.D. Mo. 2003); Freeman v. Walley, 276 F. Supp.2d 597, 600-02 (S.D. Miss. 2003); Hipke v. Kilcoin, 279 F. Supp.2d 1089, 1092-93 (D. Neb. 2003); Davis v. Carey, 149 F. Supp.2d 593, 600 (S.D. Ind. 2001); Bourget v. Government Emp. Ins. Co., 313 F.Supp. 367 (D.C.Ct. 1970).

defendant, but also that plaintiff not have obtained a prior judgment against the tortfeasor which he simply seeks to collect from the judgment debtor's insurer.

Accordingly, upon consideration, the undersigned holds that a suit such as the present one in which a plaintiff files to collect a preexisting judgment from the judgment debtor's insurer is not a 'direct action' which would make the insurer share the citizenship of its insured under the terms of 28 U.S.C. §1332(c)(1) for purposes of diversity of citizenship jurisdiction.

Nominal Party

Defendant Admiral alternatively argues that defendant SafetyNet is merely a nominal or formal party and, as such, its citizenship need not be considered for purposes of ascertaining diversity of citizenship. However, the Alabama Supreme Court has held that the insured is a 'necessary and indispensable party' to a suit under Ala.Code § 27-23-1. Chicago Title Ins. Co. v. American Guarantee and Liability Ins. Co., 892 So.2d 369 (Ala. 2004). Admiral argues that its insured's presence in this case is akin to the insurer's joinder in an uninsured/underinsured motorist case, but the defendant has not cited, nor has the court found any cases referring to an insurer in a UM/UIM suit as a necessary and indispensable party.[8]

Is Action Premature?

An additional argument made by defendant Admiral in its Answer to the complaint (doc. 3) is that the instant action was filed prematurely. Plaintiff proceeds against it pursuant to Ala.Code § 27-23-2 (1975) ,which provides that a prevailing plaintiff can file an action against an insurer to recover for a covered judgment against its insured " if the judgment is not satisfied within 30 days after the date when it is entered, … ." However, Admiral cites no case or other

---

[8] It appears to this Erie-bound federal court that Alabama law would not support Admiral's position. However, as the court finds that the parties should be realigned, it is not necessary to reach a final determination whether SafetyNet is a nominal party in this action.

7

legal authority in support of its claim that the filing of a post-judgment motion in the underlying case makes the judgment non-final and that such motion in the underlying case also precludes the filing of a direct action. Such a construction is not warranted under the plain language of the statute. Indeed, it is the law of Alabama that even the filing of an appeal, without issuance of a *supersedeas*, does not suspend the final effect of the judgment and thus did not alter the propriety or timing of a direct action under the precursor of Alabama's current direct action statute. Ohio Cas. Ins. Co. v. Gantt, 54 So.2d 595 (1951).

### Realignment

The federal removal statute, 28 U.S.C. § 1441(b), provides that civil actions brought in state court may be removed to federal court on the basis of diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Defendant Admiral argues that defendant SafetyNet's interests are properly aligned with those of the plaintiff in this litigation, and thus that both Alabama citizens should be aligned as plaintiffs, allowing the exercise of diversity jurisdiction.

In addressing the proper alignment of the parties, the court must consider "the principal purpose of the suit and the primary and controlling matter in dispute." Indemnity Ins. Co. of North America v. First Nat. Bank at Winter Park, Fla., 351 F.2d 519, 522 (5th Cir. 1965) (*citing* City of Indianapolis v. Chase Nat. Bank, 314 U.S. 63, 72 (1965)). "It is our duty…to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' ... Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest,' ... exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' ... and the 'primary and controlling matter in dispute.' " City of Indianapolis, at 70 (citations omitted); Hamer v. New York Rwy, 244 U.S.

266 (1917)(parties must be realigned for diversity purposes according to their ultimate interests in the outcome of the case).

In U.S. Fidelity & Guaranty Co. v. Algernon-Blair, Inc., 705 F.Supp. 1507 (M.D.Ala.1988), the court noted that "[t]he duty of looking beyond the pleadings to determine proper alignment is a particularly difficult one for a district court to perform. In contrast to its usual approach in analyzing a motion to dismiss, the court must critically assess the substance of the alleged controversy to determine the goals and interests of each party. Given the early stage at which this must be done and the undeveloped factual field, experienced judges may well draw different conclusions from the same situation." Id. at 1511.

Several courts within this Circuit have addressed realignment of parties. *See* Well v. Navigator Marine, Inc., 737 F.2d 1547 (11th Cir. 1984) (owner of second option to purchase property filed suit for declaratory judgment against first option holder and assignees of second option to declare validity of option; court realigned assignees of plaintiff's interest with plaintiff, because they had same interest in declaring invalidity of first option.); Indemnity Ins., *supra* (insurer of one bank sought declaratory judgment against the issuing bank and its insured, the payor bank, to determine its duties of indemnity to payor bank on losses due to forgery in signature on request for cashier's checks; realignment granted because insurer and insured shared interest in showing payees were fictitious, so that issuing bank bore liability for forged instruments); Federal Ins. Co. v. Bill Harbert Constr. Co., 83 F.Supp.2d 1331 (S.D.Ala. 1999) (City Board obtained bond for performance of construction contract; court realigned insurer and insured as plaintiffs in declaratory judgment action on basis that primary issue was whether contractor or the Board caused the breach).

"Realignment is appropriate only if the interests of the realignment parties are manifestly the same." Andalusia Enterprises, Inc. v. Evanston Ins. Co., 487 F.Supp.2d 1290, 1296-97 (N.D.Ala. 2007). A few cases, brought by an insured party against its own insurer, have realigned parties to place the insurer on one side and the insured and the injured party, with reference solely to the general issue of whether coverage exists. *See* La Shangrila, Inc. v. Hermitage Ins. Co., 2007 WL 2330912 (M.D.Fla. 2007) (realigning parties in removed case based on interests; usual alignment in declaratory judgment action is insurer against insured and injured party); Boland v. State Auto. Mut. Ins. Co., 144 F.Supp.2d 1282, 1285 (M.D.Ala. 2001); Earnest v. State Farm Fire & Cas. Co., 475 F.Supp.2d 1113, 1117 (N.D.Ala. 2007). *La Shangrila, Earnest* and *Boland* were brought by the insured, who presumably had no access to the insurer's reasoning for a potential denial of coverage and was thus interested only in the broad coverage issue, leaving it to the insurer to raise any arguments to the contrary. Given the information thus available to those courts, it makes some sense to look to the broad, general issue of coverage rather than to the specific matters upon which that issue turns.

The instant action was filed to collect insurance proceeds from the insurer [Admiral] of the judgment debtor [SafetyNet], whose policy plaintiff alleges covers the wrongful death judgment. The judgment was in the amount of $3.5 million, while the policy provides coverage of up to $1 million. SafetyNet thus faces further efforts to collect the judgment, regardless of the outcome of this litigation. In addition, SafetyNet's policy is a 'wasting' policy under which the policy limits are reduced by the insurer's defense costs. Admiral states that it has not yet made a coverage determination but, despite providing its insured with a defense, has filed no declaratory judgment action to seek a ruling that the underlying suit is not covered by the policy.

10

As noted above, SafetyNet filed a post-judgment motion in the state court action, presumably a motion for judgment as a matter of law and/or a motion for new trial on the grounds that "SafetyNet is cloaked with governmental immunity for the claims asserted against it" (Answer of defendant SafetyNet, doc. 6 at 5), that the state trial court therefore lacked subject matter jurisdiction and thus that the wrongful death judgment is void. Defendants Admiral and SafetyNet state their intentions to pursue that issue in the state court litigation, which will arguably[9] diminish the amount available to cover payment of the judgment.

However, the merits of that jurisdictional issue are not presented in this action. Defendants have mentioned the pendency of the post-judgment motion in their Answers, but whether or not defendants ultimately prevail in their efforts to alter the state trial court's ruling on that issue,[10] the state court's determination of the existence or lack of subject matter jurisdiction to have entered its judgment will be *res judicata* and cannot be separately challenged in this litigation. *See e.g.* Cunningham v. Dept. of the Navy, 455 F.Supp. 1370 (D.Conn. 1978)(plaintiff in federal action could not challenge jurisdiction of state court to issue garnishment); A.T. Clayton & Co. v. Hachenberger, 2011 WL 1899256 (M.D.Fla.)(holding that

---

[9] Plaintiff appears to set up a claim that the Alabama direct action statute would preclude at least certain expenses being set off against policy limits more than thirty days after entry of the judgment. The court makes no determination of the merits of this potential argument. However, presuming that the state court ultimately finds that it had jurisdiction to issue the judgment, SafetyNet's pecuniary interest lies in its insurer paying as large a portion of the judgment as possible, as such payment will reduce the remainder for which SafetyNet will be liable to plaintiff. Other than an interest in invalidating the judgment, which is not before this court, SafetyNet has no interest in reducing the amount which its insurer would pay to plaintiff.

[10] In the absence of information from any party concerning the issues presented in the state court action, this court presumes for present purposes that the state court's entry of judgment included a determination that it had jurisdiction.

defendant in garnishment could challenge personal jurisdiction of state court to enter underlying judgment where jurisdictional issue was not litigated in the state court proceeding.)

Thus, the primary thrust of the current litigation will be the issue of the amount [and potentially the existence] of coverage.  Despite plaintiff's claim that defendant SafetyNet takes an adverse position to the plaintiff because it seeks continued defense [and thus continued expenses reducing the available policy proceeds] by Admiral in the state court litigation, it is clear that SafetyNet's principal interest in this suit is in having Admiral pay as large a portion of the judgment as possible, thereby reducing the unsatisfied remainder of the judgment for which SafetyNet would remain liable.  No other substantive issue has been demonstrated to be involved in this action.  Based on the record, the undersigned concludes that the interests of SafetyNet are properly aligned in this litigation with those of the plaintiff.  Realignment of SafetyNet as a party plaintiff is appropriate in this case, and there thus exists complete jurisdiction between plaintiffs and defendants justifying the exercise of diversity jurisdiction.[11]

## Conclusion

For the foregoing reasons, it is hereby RECOMMENDED that the defendant Admiral's Motion to Realign be GRANTED, that SafetyNet be realigned in this action as a party plaintiff, and that plaintiff Cromwell's Motion to Remand be DENIED.

See Magistrate Judge's Explanation of Procedural Rights, attached, for important information on how to proceed.

DONE this the 21st day of June, 2011.

            /s/  Katherine P. Nelson
            **KATHERINE P. NELSON**
            **UNITED STATES MAGISTRATE JUDGE**

---

[11] Similarly, "plaintiff" SafetyNet was not required to execute or join the Notice of Removal.

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. Objection. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. ' 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added) A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. Transcript (applicable where proceedings tape recorded). Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE